IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CURTIS A. BYRON,<br><br>        Plaintiff,<br><br>    v.<br><br>COLUMBIA GAS OF PENNSYLVANIA,<br><br>        Defendant. | 2:21-CV-01365-CCW |

**OPINION**

Plaintiff Curtis A. Byron claims that his employer, Columbia Gas of Pennsylvania,[1] discriminated against him on the basis of his age by failing to promote him to the position of Field Operations Leader, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* *See generally* ECF No. 1. In its Motion for Summary Judgment, Columbia Gas argues that Mr. Byron cannot point to evidence sufficient to make out a prima facie failure to promote claim and that he likewise cannot establish that Columbia Gas's reasons for not promoting Mr. Byron were pretextual. *See* ECF No. 23 at 1–2. For the reasons set forth below, the Court will grant Columbia Gas's Motion.

**I.    Background**

    **A.    Procedural History**

Mr. Byron initiated this case by filing his Complaint on October 12, 2021. *See* ECF No. 1. Both Counts of the Complaint allege discrimination based on age due to Columbia Gas's failure

---

[1] Defendant contends that its proper name is "Columbia Gas of Pennsylvania, Inc.," not Columbia Gas of Pennsylvania, a division of NiSource," as listed in the case caption. ECF No. 23 at 1. However, it has not moved to amend the case caption. The Court will refer to Defendant as "Columbia Gas" in this Opinion.

to promote Mr. Byron. Count I is brought pursuant to the federal ADEA, and Count II is brought pursuant to the PHRA. *Id.* at 3, 5.

Following discovery, Columbia Gas filed its Motion for Summary Judgment, which is now fully briefed and ripe for disposition. *See* ECF Nos. 22–31.

### B.  Plaintiff Has Failed to Properly Respond to Assertions of Fact Relevant to Deciding Columbia Gas's Motion for Summary Judgment

Mr. Byron's Response to Defendant's Concise Statement of Material Facts, ECF No. 27 in many instances fails to properly contest the material facts at issue here as disputed or undisputed. *See* Fed. R. Civ. P. 56(c)(1) (requiring party asserting or disputing fact to either cite to materials in the record or show the materials cited do not establish presence or absence of genuine factual dispute). The Western District of Pennsylvania's Local Rules specifically require a party opposing a motion for summary judgment to file a responsive concise statement of material fact that responds to each numbered paragraph in the movant's concise statement by (1) admitting or denying the facts asserted in the movant's concise statement; (2) setting forth the basis for any denial, to the extent a fact is not admitted entirely, with appropriate citation to the record; and (3) setting forth, in separately numbered paragraphs, any other material facts at issue. *See* LCvR 56(C)(1). Courts in this district "require strict compliance with the provisions of Local Rule 56." *Mattis v. Overmeyer*, Case No. 1:16-cv-00306, 2019 WL 2542283, at *3 (W.D. Pa. June 20, 2019) (collecting cases). A non-moving party "faces severe consequences for not properly responding to a moving party's concise statement," namely, that any fact claimed to be undisputed in the moving party's concise statement "'will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.'" *Hughes v. Allegheny Cnty. Airport Auth.*, Civil Action No. 15-221, 2017 WL 2880875, at *1 (W.D. Pa. July 6, 2017) (quoting LCvR 56(E)).

2

Here, Mr. Byron's Response to Defendant's Concise Statement, ECF No. 27, in many instances, lodges the same boiler plate objection to Columbia Gas's fact and denies that fact without any citation to the record. Specifically, Mr. Byron objects that "Plaintiff is without knowledge or opinion sufficient to form an opinion as to the truth or falsity of the allegations set forth in this paragraph. Therefore, the same are denied and strict proof thereof is demanded at the time of trial." *See, e.g.*, ECF No. 27 at ¶¶ 10–14, 24, 26, 28–29, 32, 34–40. Because this response by Mr. Byron does not properly oppose Columbia Gas's facts, the Court will consider as undisputed the facts asserted in Columbia Gas's Concise Statement except to the extent that Plaintiff's Concise Counterstatement properly opposes that fact with citations to the record. *See* Fed. R. Civ. P. 56(e)(2) (permitting a court, where a fact is not properly supported or disputed, to "consider the fact undisputed for purposes of the motion"); *see also* LCvR 56.E; *EEOC v. U.S. Steel Corp.*, Civil Action No. 10-1284, 2013 WL 625315, at *1 n.1 (W.D. Pa. Feb. 20, 2013) ("To the extent that [plaintiff] fails to either admit or deny these facts [in defendant's concise statement], they will be deemed admitted." (citing LCvR 56(E))).

**C.    Material Facts**

The following facts are drawn from the parties' Concise Statements of Material Facts, ECF Nos. 24, 27, & 29, and are undisputed unless noted otherwise.

Mr. Byron is currently sixty-one years old and has been employed with Columbia Gas since 1980. *See* ECF No. 29 ¶¶ 1, 5; ECF No. 25-1 at 10:19–23. Since 1984, Mr. Byron has held his current position of Customer Service A. *See* ECF No. 29 ¶ 2. In that position, he reported to Field Operations Leader Bill Vanek during the time period relevant to this case. *Id.* ¶¶ 3, 96. Mr. Vanek, in turn, reported to Operating Center Manager Kevin Steele. *Id.* ¶ 4. Mr. Vanek is currently sixty-

five years old, and Mr. Steele is currently sixty-one or sixty-two years old. *Id.* ¶ 5; ECF No. 25-1 at 94:13–14; ECF No. 25-3 at 9:2–3.

Columbia Gas posted an opening for the position of Field Operations Leader on October 31, 2019, both internally and externally. ECF No. 29 ¶ 7. Mr. Byron's second level supervisor Mr. Steele was the hiring manager for the position. *Id.* ¶¶ 4, 9. Thirty-two candidates, including Mr. Byron, applied. *Id.* ¶ 12. Five of the thirty-two candidates, including Mr. Byron, were internal. *Id.* ¶ 13. All of the other internal candidates were under thirty-five years old. *Id.* ¶ 31.

Mr. Steele and fellow Columbia Gas employee Keely Fergus made up the interview team for the position, and they selected five of the 32 candidates for an interview. *Id.* ¶¶ 25, 26. All five of the candidates who received interviews met the minimum qualifications for the position. *Id.* ¶ 28. Mr. Byron was the only internal candidate who was chosen for an interview. *Id.* ¶ 30.

Mr. Steele and Ms. Fergus interviewed the five candidates on November 25, 2019. *Id.* ¶ 33. All five interviewees were instructed at the beginning of their interviews to answer questions using the STAR format, which stands for "Situation-Task-Action-Result." *Id.* ¶ 34 (emphasis omitted). Specifically, Mr. Steele and Ms. Fergus expected each interviewee to answer each question by describing one situation or task, the action they took, and the result of that action. *Id.* ¶ 35.

Mr. Steele and Ms. Fergus asked each of the five candidates the same interview questions, except for follow-up questions by either the interviewers or the interviewee. *Id.* ¶ 38. The questions corresponded with six different categories or competencies, such as "Background/Motivational Fit," ability to "Build a Successful Team," and "Adaptability." *Id.* ¶ 36. Each candidate was rated on a scale of 1 to 5 on each question, which corresponded with

various categories or competencies.  *Id.*  In addition, interviewees were rated on their "Overall Communication" during the interview, on a scale of 1 to 5.  ECF No. 29 ¶ 37.

Immediately after each interview Mr. Steele and Ms. Fergus independently scored the interviewee's responses to each question on scale of 1 to 5, and then they discussed the interview with one another and came to a consensus on those scores.  *Id.* ¶ 39.  In rating candidates' responses to interview questions, Mr. Steele was looking for the candidates to provide stories and examples that showed their ability to lead a team, since the Field Operations Leader position was a leadership job.  *Id.* ¶ 40.

As hiring manager for the Field Operations Leader position, Mr. Steele was responsible for selecting the candidate to whom an offer would be extended.  *Id.* ¶¶ 9, 59.  Mr. Steele selected external candidate Jesse Irwin, age thirty-five, for the Field Operations Leader position.  *Id.* ¶¶ 22, 59.

The determining factor in Mr. Steele's decision to hire Mr. Irwin was Mr. Irwin's interview score.  *Id.* ¶ 60.  Mr. Irwin's total score was 28.5 out of 35, which was the highest of the five candidates who had interviewed for the position.  *Id.* ¶ 57.  Mr. Steele understood that Mr. Irwin's interview score measured his ability to thrive in the leadership position.  *Id.* ¶ 61.  Mr. Byron received a total score of 18 out of 35, which was the third-highest score of the five interviewees.  *Id.* ¶ 58.

Mr. Irwin scored higher than "acceptable," i.e. at least a 4 out of 5, in each of the seven categories.  *Id.* ¶ 53.  Mr. Steele testified that Mr. Irwin received scores of 4 or above in every category because throughout the interview, he communicated very well, presented his process by identifying the task, the content of his action, and showing that he would bring his team in and have discussions/include them in his decisions, and would set expectations and follow up with

them as well. *Id.* ¶¶ 54, 55. Conversely, the only category in which Mr. Byron received an above-"acceptable" score, i.e. a 4 out of 5, was in "Background/Motivational Fit," because in response to questions on that topic he explained his background and the technical skills he had, which consisted of thirty-nine years of experience in the relevant field. *Id.* ¶ 44. Overall, Mr. Byron did not answer questions in the STAR format, he had a hard time identifying a situation or task, and he did not tie his ability to succeed as a leader into his answers. *Id.* ¶ 46.

Mr. Byron has no knowledge of how other candidates' interviews went, including Mr. Irwin's. *Id.* ¶ 69. Mr. Byron does not know what questions were asked of other interviewees or how they responded to those questions. *Id.* ¶ 69.

## II.  Standard of Review

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The burden to establish that there is no genuine dispute as to any material fact "remains with the moving party regardless of which party would have the burden of persuasion at trial." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (internal quotation marks

omitted). Furthermore, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87. Thus, while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings" and point to "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). But, while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor . . . . to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal quotation marks omitted). Instead, "there must be evidence on which the jury could reasonably find for the non-movant." *Id.* (cleaned up).

### III.   Discussion

Columbia Gas seeks summary judgment on two grounds. First, it argues that Mr. Byron has failed to make out a prima facie case of age discrimination under the ADEA or the PHRA. Second, Columbia Gas asserts that even if Mr. Byron has made out a prima facie case, he has failed to establish that Columbia Gas's legitimate non-discriminatory reason for selecting someone else was pretextual. ECF No. 23 at 2. The Court will address each argument in turn.

### A. Legal Framework

For claims of age discrimination, courts apply the same framework under the ADEA and the PHRA. *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998) ("There is no need to differentiate between . . . ADEA and PHRA claims because . . . the same analysis is used for both."); *see also Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015); *Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005). Under the familiar *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of age discrimination by pointing to evidence supporting the following elements: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment action, e.g., was not selected for a promotion; (3) the plaintiff was otherwise qualified for the position; and (4) the employer filled the position with someone sufficiently younger, so as to create an inference of age discrimination. *See Burton*, 707 F.3d at 426; *Willis*, 808 F.3d at 643; *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 698 (3d Cir. 1995). Producing evidence sufficient to satisfy the elements of a prima facie case creates an "inference of unlawful discrimination." *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 357 (3d Cir. 1999) (quoting *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 494 (3d Cir. 1995)).

Once the prima facie case is established, the burden of production shifts to the employer to provide a legitimate non-discriminatory reason for the employment action. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410, 412 (3d Cir. 1999). "This burden is 'relatively light' and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Burton*, 707 F.3d at 426 (quoting *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)).

If the employer meets its burden of production at the second step, "[t]he third step in the *McDonnell Douglas* analysis shifts the burden of production back to the plaintiff to provide

8

evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." *Burton*, 707 F.3d at 426 (citing *Fuentes v. Perskie*, 32 F.3d 759, 764–65 (3d Cir. 1994)). Although the burden of *production* shifts between the parties, the burden of *persuasion* always remains with the plaintiff. *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009). Thus, throughout the burden-shifting framework, the plaintiff always bears the burden of persuading the factfinder that discrimination would not have occurred "but for" the plaintiff's age. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009); *see also Smith*, 589 F.3d at 691.

### 1. Mr. Byron has Established a Prima Facie Case of Age Discrimination

Columbia Gas does not dispute that Mr. Byron has satisfied the first three elements of his prima facie case, namely that he was over forty and was not selected for promotion to the field operations position, for which he was qualified given his years of experience in the industry.

Columbia Gas does assert that Mr. Byron cannot meet the fourth element of the prima facie case. However, Columbia Gas describes the fourth element as "conditions giving rise to an inference of discrimination accompanied Columbia Gas's failure to select [Mr. Byron]." ECF No. 23 at 4. This mischaracterizes the fourth element of the prima facie case under the ADEA and PHRA. The Third Circuit has held that, under the fourth element, the plaintiff must show only that the other candidate selected for the position was "sufficiently younger" than the plaintiff. *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 234–36 (3d Cir. 1999); *see also Smith*, 589 F.3d at 689.[2] Here, the selectee, Mr. Irwin, was thirty-five years old, which is significantly younger than Mr. Byron, who was approximately fifty-eight years old at the time of the selection.

---

[2] Both parties spend significant energy debating whether Mr. Byron and Mr. Irwin were "similarly situated." *See* ECF No. 23 at 4–5; ECF No. 26 at 9–10. Analyzing whether two individuals are similarly situated, however, only is relevant for age discrimination suits involving reduction-in-force scenarios. *See Anderson v. Consol. R. Corp.*, 297 F.3d 242, 249–50 (3d Cir. 2002).

Accordingly, Mr. Byron has established a prima facie case of age discrimination under the ADEA and PHRA, and the Court will proceed to the next step of the burden-shifting framework.

### 2. Columbia Gas Has Established a Legitimate Non-Discriminatory Reason for Not Promoting Mr. Byron

Columbia Gas has met its relatively light burden of articulating a legitimate, non-discriminatory reason for its selection decision. Specifically, it contends that its decision to hire Mr. Irwin was based on his performance during his interview. ECF No. 29 ¶¶ 49–57. Using the STAR format, Mr. Irwin excelled during his interview and scored the highest of all the candidates. *Id.* ¶¶ 34–40, 53–55. Mr. Byron, by contrast, did not perform as well during his interview and scored significantly lower than Mr. Irwin. *Id.* ¶¶ 45–47, 58. In assessing an employer's proffered reason, a court cannot accept a criterion that has no connection at all to the candidate's performance. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 468 (3d Cir. 2005). "Absent this type of violation," however, a court should not "second guess the method an employer uses to evaluate its employees." *Id.* (citing *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 647 (3d Cir. 1998)). Because the interview does bear a relationship to a candidate's performance, such as a person's leadership qualities or communication skills, Columbia Gas has provided a legitimate non-discriminatory reason for selecting Mr. Irwin—rather than Mr. Byron—for the position. *See Thompson v. Bridgeton Bd. of Educ.*, 613 Fed. App'x 105, 108 (3d Cir. 2015) (recognizing that "poor interview performance is a legitimate non-discriminatory reason for refusal to hire").

### 3. Mr. Byron has Failed to Establish a Genuine Question of Material Fact as to Whether Columbia Gas's Legitimate Non-Discriminatory Reason was Pretextual

Finally, at the last step of the *McDonnell Douglas* analysis, Mr. Byron must point to evidence that would either (1) allow a factfinder to disbelieve Columbia Gas's proffered legitimate nondiscriminatory reason for taking adverse action or (2) allow a fact finder to believe that

unlawful discrimination was more likely than not the reason for the employer's action. *See Willis*, 808 F.3d at 644–645. Establishing pretext is demanding because the "question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." *Parks v. Rumsfeld*, 119 Fed. App'x 382, 384 (3d Cir. 2005) (quoting *Keller*, 130 F.3d at 1109).

To meet his burden under the first method, a plaintiff's evidence "'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence."'" *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F.3d at 765). A factfinder may only find pretext if the plaintiff has shown "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997). The second method of proving pretext requires the plaintiff produce evidence that would cause a factfinder to believe that a discriminatory reason was more likely than not a determinative factor for its adverse employment action. *Willis*, 808 F.3d at 649 (internal quotation marks omitted); *see also Gross*, 557 U.S. at 177 (requiring "but-for" causation in age discrimination cases under the ADEA). Identifying minor discrepancies in the process is insufficient to meet this burden, rather Mr. Byron must present specific facts that one could conclude by a preponderance of the evidence that Columbia Gas discriminated against him because of his age. *Simpson*, 142 F.3d at 644–45; *see also Howell v. Millersville Univ. of Pa.*, 283 F. Supp. 3d 309, 327, 329 (E.D. Pa. 2017). Mr. Byron has failed to establish a genuine question of material fact on the issue of pretext under either method.

With respect to the first method of establishing pretext, Mr. Byron has not provided evidence from which a factfinder could conclude that Columbia Gas's proffered reason—its

11

reliance on the interview—is unworthy of credence. It is undisputed that Mr. Irwin scored the highest of out of the five candidates who were interviewed, with a score of 28.5 out of 35, while Mr. Byron scored third out of five with a score of 18 out of 35. ECF No. 29 ¶¶ 57–58. Although Mr. Byron takes issue with the interview process, such as the length of time of his interview, his ultimate score, and the weight the interview had in the hiring process, *see* ECF No. 26 at 13–14, it is not the Court's place to substitute its business judgment for that of the employer. *Parks*, 119 Fed. App'x at 384. Employers have wide discretion on how they evaluate their employees, *Kautz*, 412 F.3d at 468, and "ha[ve] the right to make business judgments on employee status," especially when relying on an interview, *Healy v. N.Y. Life Ins.*, 860 F.2d 1209, 1220 (3d Cir. 1988); *Thompson*, 613 Fed. App'x at 108.

Here, the interviewers followed a consistent process for each interview, which involved instructing each interviewee to answer using the STAR format, asking each interviewee the same questions, and scoring each interviewee's response to each question. ECF No. 29 ¶¶ 35–37. And Mr. Steele, the decisionmaker, articulated the reason he selected Mr. Irwin: The determinative factor for Mr. Steele was Mr. Irwin's interview score, which Mr. Steele understood to measure Mr. Irwin's ability to thrive in the leadership position. *Id.* ¶¶ 40, 53–57, 60–63. Mr. Byron does not dispute shortcomings in his own interview performance, including that he did not answer questions in the STAR format, he had a hard time identifying a situation or task, and he did not tie his ability to succeed as a leader into his answers. *Id.* ¶¶ 46, 58. And he has no knowledge of how other candidates performed in their interviews. *Id.* ¶¶ 64, 68–69. Taking the facts in the light most favorable to Mr. Byron as the non-moving party, he has not shown that Columbia Gas's reason for selecting Mr. Irwin—based on his interview performance—was wrong, let alone so plainly wrong that a reasonably jury could find it unworthy of belief.

Turning to the second method of proving pretext, Mr. Byron has not produced evidence by which a factfinder could find that discrimination was the determinative factor in the decision to select another candidate for the position. As evidence of discrimination, Mr. Byron points to how Columbia Gas treated Mr. Irwin, a younger candidate who was allegedly less qualified for the position, more favorably than Mr. Byron, an older candidate with more years of experience in the industry. ECF No. 26 at 16–18. Mr. Byron argues that Columbia Gas should have scored him higher than Mr. Irwin in certain categories. *Id.* at 16–17.[3] Comparative evidence, specifically whether an employer treated other protected class members less favorably than non-members, has been recognized as one way to establish pretext, but the Third Circuit has cautioned that such evidence cannot be viewed in a vacuum. *Simpson*, 142 F.3d at 645, 647 (disapproving of a plaintiff "selectively choos[ing] a comparator" but ignoring "a significant group of comparators who were treated equally or less favorably" than the plaintiff).

Here, the evidence indicates that Mr. Byron was treated more favorably than younger candidates. Out of thirty-two candidates, he was one of only five candidates selected for an interview. ECF No. 29 ¶¶ 12, 30. Columbia Gas did not extend interviews to the four other internal candidates, who were all under thirty-five years old. *Id.* ¶ 30. Furthermore, Mr. Byron has not demonstrated that Columbia Gas more generally treated older employees less favorably than younger employees. All other Field Operations Leaders were members of Mr. Byron's protected class—they were sixty-three, sixty-two, forty-six, and forty-five years old. *Id.* ¶¶ 10–11. In addition, Mr. Steele, who was responsible for deciding between the candidates, was

---

[3] As evidence of discrimination, Mr. Byron also points to statements made by Mr. Irwin. ECF No. 26 at 18. Such statements by the selectee, even if considered by the Court, are not sufficient to overcome summary judgment. Rather, it is the decisionmaker's conduct that controls the analysis. *See Buj v. Psychiatry Residency Training*, 860 Fed. App'x 241, 244 n.3 (3d Cir. 2021) (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992)) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight.").

approximately the same age as Mr. Byron. *Id.* ¶¶ 5, 59. Therefore, Mr. Byron has failed to meet this second method of establishing pretext because none of this evidence suggests that Columbia Gas discriminated against Mr. Byron because of his age. Because Mr. Byron has failed to establish a "genuine issue for trial" on the issue of pretext, summary judgment in favor of Columbia Gas is appropriate.

**IV.  Conclusion**

For the foregoing reasons, Defendant Columbia Gas's Motion for Summary Judgment will be GRANTED. Accordingly, Mr. Byron's claims will be dismissed and judgment will be entered in Columbia Gas's favor.

DATED this 2nd day of December, 2022.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record